UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DANIEL M. SHUMWAY,

                                                        Plaintiff,                Case # 21-CV-6509-FPG

v.                                                                                   DECISION & ORDER

CELLULAR SALES SERVICES GROUP, LLC,

                                                       Defendant.
_____

## INTRODUCTION

Plaintiff Daniel M. Shumway brings this employment discrimination action, alleging that he was subjected to unlawful sex and disability discrimination during his employment with Defendant Cellular Sales Services Group, LLC. *See* ECF No. 1. Defendant now moves to compel arbitration. ECF No. 13. Plaintiff opposes the motion. ECF No. 20. For the reasons that follow, Defendant's motion is GRANTED.

## LEGAL STANDARD

"Courts deciding motions to compel [arbitration] apply a standard similar to that applicable for a motion for summary judgment."[1] *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (internal quotation marks omitted). "[T]he court considers all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and draws all reasonable inferences in favor of the

---

[1] In its original motion, Defendant also moved to dismiss the complaint under Rule 12(b)(6). *See* ECF No. 13-2 at 1. Because Defendant requests that the Court compel arbitration, *see id.* at 1, 16, and relies on materials outside of the complaint, *see, e.g.*, ECF Nos. 13-3, 13-4, 13-5, the Court treats its motion as one "to compel arbitration." *Begonja v. Vornado Realty Trust*, 159 F. Supp. 3d 402, 405 n.1 (S.D.N.Y. 2016) (collecting cases). Furthermore, consistent with Rule 12(d), the Court notified the parties of its intent to analyze Defendant's motion "under the standard applicable to a motion for summary judgment." ECF No. 24 (citing *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229-31 (2d Cir. 2016)). Accordingly, the parties have been given a full opportunity to "present all the material that is pertinent" to Defendant's motion. Fed. R. Civ. P. 12(d).

non-moving party." *Id.* (internal quotation marks, brackets, ellipsis, and citation omitted). "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Mancilla v. ABM Indus., Inc.*, No. 20-CV-1330, 2020 WL 4432122, at *5 (S.D.N.Y. July 29, 2020). "Where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, courts may rule on the basis of that legal issue and avoid the need for further court proceedings." *Gilbert v. Indeed, Inc.*, 513 F. Supp. 3d 374, 390 (S.D.N.Y. 2021) (internal brackets omitted).

## BACKGROUND

The following facts are taken from the record. Defendant operates several retail stores selling cell-phone equipment, accessories, and services. ECF No. 13-3 ¶ 3. Per the declaration of Tim Blackburn—one of Defendant's regional directors—prospective employees proceed through a four-week training period before they are formally hired. ECF No. 23-1 ¶ 4. During this training, prospective employees shadow experienced employees, and they undertake a week of classroom instruction on sales techniques and Defendant's policies. Blackburn avers that, as part of the classroom training, prospective employees review the "Dealer Compensation Agreement" that governs the relationship between Defendant and its sales representatives. *Id.* ¶ 5; *see also* ECF No. 13-5 (copy of agreement). The Dealer Compensation Agreement contains an arbitration clause:

> Any controversy or dispute (whether pre-existing, present, or future) between Dealer [(*i.e.*, the employee)] and [Defendant] arising from or in any way related to Dealer's work with [Defendant] or the termination thereof, including, but not limited to . . . any claim of employment discrimination or retaliation, including, but not limited to, discrimination based on age, disability, national origin, race, or sex . . . [and] any claim under the Americans with Disabilities Act . . . or any related state law or regulation . . . must be resolved exclusively by final and binding arbitration under the Employment Dispute Resolution Rules of the American Arbitration Association ("AAA") then applicable to the dispute . . . .

ECF No. 13-5 at 7-8.  By its terms, the Dealer Compensation Agreement is governed by the Federal Arbitration Act ("FAA") and, when state law applies, New York law.  *See id.* at 8.

It is undisputed that, in early 2018, Plaintiff participated in Defendant's extended training program before he was formally hired.  Defendant asserts that, during the training period, Plaintiff received three opportunities to review the Dealer Compensation Agreement containing the above arbitration provision.

The first and second opportunities occurred in January 2018.  As part of classroom instruction, trainees—including Plaintiff—reviewed Defendant's policies, including the Dealer Compensation Agreement, with a trainer.  *See* ECF No. 23-1 ¶ 5.  On a subsequent day, Plaintiff and the other trainees again reviewed the Dealer Compensation Agreement, this time with Luke Fletcher, another regional director.  ECF No. 23-1 ¶ 6 (declaration of Blackburn); ECF No. 23-8 ¶¶ 5-6 (declaration of Luke Fletcher).  Blackburn and Fletcher both aver that Plaintiff did not object to the arbitration provision when Fletcher reviewed it with the trainees.  ECF No. 23-1 ¶ 6; ECF No. 23-8 ¶ 6.  Despite being given an opportunity to submit "any additional evidence . . . related to Defendant's motion," ECF No. 24, Plaintiff has not proffered any evidence to dispute Defendant's claim that he learned about and reviewed the Dealer Compensation Agreement (and its arbitration provision) in January 2018.[2]

---

[2] The only evidence that Plaintiff chose to submit in connection with Defendant's motion is his declaration.  *See* ECF No. 20-2 at 2.  In the declaration, Plaintiff does not specifically deny any of the factual assertions Defendant makes regarding the January 2018 training.  But he does assert the following:  "If the agreement to arbitrate was presented to me in any shape or form I would have never agreed to sign that.  That would leave me defenseless in the event that I needed to arbitrate."  *Id.*  Read (extremely) liberally, one might construe this statement to mean that Plaintiff denies ever having been "presented" with the Dealer Compensation Agreement *at any time*, including the January 2018 training.  But his statement is far too conclusory to create a genuine issue of material fact, couched as it is in terms of a vague counterfactual rather than a specific factual assertion or denial.  *See S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021) ("A party opposing summary judgment normally does not show the existence of a genuine issue of fact to be tried merely by making assertions that . . . are conclusory."); *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 51-52 (2d Cir. 2022) (employee's declaration was sufficient to create genuine issue of material fact as to whether she agreed to arbitration, where she denied each of employer's factual claims in "specific and exacting terms"); *Mancilla*, 2020 WL 4432122, at *5 ("[A] party opposing arbitration may not satisfy this burden through general denials of the facts on which the right to arbitration depends.").

The third opportunity is alleged to have occurred on February 2, 2018, though the parties dispute what happened.  Blackburn avers that, as part of the hiring process, new employees were required to "complete and agree" to several documents, including the Dealer Compensation Agreement, through an online portal.  ECF No. 23-1 ¶ 8.  Defendant presents evidence showing that, while at work on February 2, 2018, Plaintiff used the online portal to execute the Dealer Compensation Agreement.  *See* ECF No. 23-1 ¶¶ 8-12; ECF No. 13-5 at 9.  However, Plaintiff denies that he reviewed or executed the Dealer Compensation Agreement.  In his declaration, Plaintiff explains that when he logged in to the online portal, he had trouble "figuring out how to read [the] electronic paperwork."  ECF No. 20-2 at 2.  In response, a "training manager," whom Plaintiff does not identify, "came over and clicked a bunch of buttons and said [Plaintiff] was 'all set.'"  *Id.*  Plaintiff avers that he never signed an "arbitration agreement."  *Id.*

Regardless of this dispute, it is undisputed that after completing the training program, Plaintiff formally began his employment with Defendant as a sales representative.  In his complaint, Plaintiff alleges that during his employment, he was subjected to various forms of disability and sex discrimination at work.  *See generally* ECF No. 1.  Plaintiff was terminated on July 31, 2018, and on August 2, 2021, he filed the present action.  Plaintiff raises claims for disability and sex discrimination under federal and New York law.

## DISCUSSION

Defendant requests that the Court compel Plaintiff to arbitrate his claims pursuant to the Dealer Compensation Agreement.  Plaintiff counters that this relief should be denied because (1) he has presented credible evidence that he did not execute the Dealer Compensation Agreement,

4

and (2) regardless, the doctrine of laches precludes enforcement of the arbitration provision.[3] *See* ECF No. 20.

The FAA provides that "a written provision in a contract to settle by arbitration a controversy thereafter arising out of the contract shall be valid, irrevocable, and enforceable." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 228 (2d Cir. 2016) (internal quotation marks, brackets, and ellipses omitted). "The Supreme Court has repeatedly instructed that the FAA embodies a national policy favoring arbitration." *Id.* at 228 (internal quotation marks and brackets omitted). Nevertheless, "the FAA does not require parties to arbitrate when they have not agreed to do so." *Id.* at 229 (internal quotation marks omitted).

"When determining whether a dispute should be arbitrated, a court must answer two questions: (1) whether there is a valid agreement to arbitrate, and, if so, (2) whether the subject of the dispute is within the scope of the arbitration agreement." *Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 829 (S.D.N.Y. 2020). "The threshold question of whether the parties indeed agreed to arbitrate is determined by state contract law principles." *Nicosia*, 834 F.3d at 229. The parties do not dispute that New York law governs. *See* ECF No. 13-5 at 8; ECF No. 13-2 at 10-11; *see generally* ECF No. 20.

"Under New York law, the party seeking arbitration bears the burden of proving that a valid arbitration agreement exists, but need only prove the existence of a valid arbitration agreement by a preponderance of the evidence." *Solis v. ZEP LLC*, No. 19-CV-4239, 2020 WL 1439744, at *4 (S.D.N.Y. Mar. 24, 2020) (internal brackets omitted). "Thus, the party seeking

---

[3] In passing, Plaintiff asserts that the "doctrine of Estoppel" bars Defendant from invoking the arbitration provision. ECF No. 20 at 8. Plaintiff cites no legal authority to support this assertion, nor does he identify and apply any applicable standard to show how "estoppel" may be invoked here. The Court is under no obligation to do so on his behalf, and it therefore declines to address the issue. *See Spectrum Northeast, LLC v. City of Rochester*, No. 21-CV-6453, 2022 WL 787964, at *4 (W.D.N.Y. Mar .15, 2022).

arbitration must prove by a preponderance of the evidence that all the elements necessary to form a valid contract are met, namely offer, acceptance, consideration, mutual assent and intent to be bound." *Id.* (internal quotation marks omitted).

Importantly, however, "a party may be bound by an agreement to arbitrate even in the absence of a signature." *Brown v. St. Paul Travelers Cos.*, 331 F. App'x 68, 70 (2d Cir. 2009) (summary order). "Under New York law, the conduct of the parties may lead to the inference of a binding agreement: A contract implied in fact may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the presumed intention of the parties as indicated by their conduct. It is just as binding as an express contract arising from declared intention, since in the law there is no distinction between agreements made by words and those made by conduct." *Id.* (quoting *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 582 (2d Cir. 2006)). Based on this principle, courts in this Circuit have held that "[w]hen an arbitration policy is a condition of employment, an employee will be deemed to have accepted an arbitration agreement when she continues to work after the promulgation of the arbitration policy." *Brown v. St. Paul Travelers Cos.*, 559 F. Supp. 2d 288, 291 (W.D.N.Y. 2008) (internal quotation marks and ellipsis omitted). This is because "the employee's continued employment serves as an objective manifestation of the employee's intent to be bound." *Rightnour v. Tiffany & Co.*, 239 F. Supp. 3d 744, 752 (S.D.N.Y. 2017) (internal brackets and quotation marks omitted); *see, e.g.*, *Gil v. Bensusan*, No. 18-CV-10657, 2019 WL 12334706, at *5 (S.D.N.Y. Oct. 30, 2019) ("Once an employee has notice of an arbitration policy, continued employment, without more, is sufficient to manifest assent to the policy." (internal quotation marks omitted)); *cf. Brown v. Coca-Cola Enters., Inc.*, No. 08-CV-3231, 2009 WL 1146441, at *8 (E.D.N.Y. Apr. 28, 2009) (employee's attendance at orientation, during which

mandatory arbitration program was discussed, established that employee "received clear notice that his continued employment would constitute an agreement to be bound by the arbitration provisions").

In this case, the undisputed evidence establishes that Plaintiff was twice notified of the Dealer Compensation Agreement and its arbitration provision during his January 2018 training. *See* ECF No. 23-1 ¶¶ 5-6; ECF No. 23-8 ¶¶ 5, 6. Furthermore, Plaintiff does not dispute Defendant's claim that, as a condition of his employment, he was required to execute the Dealer Compensation Agreement through Defendant's online portal. *See* ECF No. 23-1 ¶ 8; *cf.* ECF No. 20-2 at 2 (declaration of Daniel Shumway) (stating that he recalls "when we had to electronically sign paperwork"). Indeed, he does not dispute that he received login information so that he could execute the necessary employment paperwork, *see* ECF No. 23-3 at 2, or that he logged in to the online portal on February 2, 2018, in order to do so. ECF No. 20-2 at 2; ECF No. 23-1 ¶ 12; ECF No. 23-11 at 45.

These undisputed facts establish that Plaintiff received notice of the Dealer Compensation Agreement and its arbitration provision and was aware that his execution of the Dealer Compensation Agreement was a condition of his continued employment. Consequently, he manifested his intent to be bound by continuing his employment with Defendant. *See Olivieri v. Stifel, Nicolaus & Co.*, No. 21-CV-46, 2022 WL 900713, at *3 (E.D.N.Y. Mar. 28, 2022). This is true regardless of whether he actually signed the Dealer Compensation Agreement.[4] *See Pettersen*

---

[4] Although Defendant did not frame its argument in these terms, *see* ECF Nos. 13-2, 23, the Court finds that Plaintiff had a sufficient opportunity to address this issue. In its reply brief, Defendant unequivocally asserted that "Plaintiff cannot claim he was unfamiliar with the [Dealer Compensation] Agreement, as it was previously reviewed with him prior to his signing it on February 2, 2018." ECF No. 23 at 9; *see also* ECF No. 23-1 ¶¶ 5, 6. Subsequently, the Court gave Plaintiff the opportunity to supplement his briefing with "any additional evidence and/or argument," ECF No. 24, but he did not file any supplemental materials, let alone materials specifically disputing Defendant's factual claim.

*v. Volcano Corp.*, No. 18-CV-3021, 2020 WL 6323937, at *5 (E.D.N.Y. Sept. 8, 2020) (collecting cases).

Accordingly, Plaintiff cannot avoid application of the arbitration provision on the theory that he never actually executed the Dealer Compensation Agreement. Because he does not otherwise dispute that the Dealer Compensation Agreement is valid or that his present dispute comes within the scope of the arbitration provision, *see generally* ECF No. 20, there is no genuine issue of material fact that the arbitration provision is enforceable.

Plaintiff's only other argument is that laches precludes application of the arbitration provision, insofar as Defendant did not raise the issue of arbitration during administrative proceedings before the New York Division of Human Rights. *See* ECF No. 20 at 7-8. The applicability of laches is itself an issue for arbitration, however. "Under the FAA, whether laches doctrine serves as a defense against enforcement of an arbitration agreement is, by default, an issue for the arbitrator to decide." *Zurich Ins. Co. v. Crowley Latin Am. Servs., LLC*, No. 16-CV-1861, 2016 WL 7377047, at *4 (S.D.N.Y. Dec. 20, 2016); *see also Pacelli v. Augustus Intelligence, Inc.*, 459 F. Supp. 3d 597, 610 (S.D.N.Y. 2020) (collecting cases). Plaintiff develops no argument that this presumption should be displaced notwithstanding the broad language of the arbitration provision. Indeed, the arbitration provision mandates arbitration of "any dispute about the interpretation, validity, construction, scope, or *enforceability* of this Agreement." ECF No. 13-5 at 7 (emphasis added).

For these reasons, the Court concludes that Plaintiff may be properly compelled to arbitrate his employment discrimination claims pursuant to the Dealer Compensation Agreement. The only remaining question is whether to dismiss or stay the case. In *Katz v. Cellco P'ship*, 794 F.3d 341 (2d Cir. 2015), the Second Circuit held that a district court must "stay proceedings pending

arbitration," provided that "a stay is requested." *Katz*, 794 F.3d at 345. If a stay is not requested, the district court retains the discretion to dismiss the case. *See Dylan 140 LLC v. Figueroa as Tr. of Bldg. Serv. 32BJ Health Fund*, 982 F.3d 851, 858 n.2 (2d Cir. 2020) ("[T]he FAA permits courts to dismiss rather than stay litigation pending arbitration if the party does not request a stay and if all claims in the action will be resolved by arbitration."); *Benzemann v. Citibank N.A.*, 622 F. App'x 16, 18 (2d Cir. 2015) (summary order). Nevertheless, the Second Circuit has counseled that a stay is more consistent with the "FAA's statutory scheme and pro-arbitration policy," in that it "move[s] the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Katz*, 794 F.3d at 346. "Following *Katz*, courts in this Circuit regularly stay, rather than dismiss, complaints subject to an arbitration agreement." *Charter Comm'ns, Inc. v. Garfin*, No. 20-CV-7049, 2021 WL 694549, at *14 (S.D.N.Y. Feb. 23, 2021) (collecting cases).

Because neither party has offered "a compelling reason to deviate from this practice," the Court will stay, rather than dismiss, this matter. *Chung v. 335 Madison Ave. LLC*, No. 21-CV-3861, 2021 WL 4710483, at *4 (S.D.N.Y. Oct. 7, 2021).

## CONCLUSION

For the reasons stated herein, Defendant's motion to compel arbitration (ECF No. 13) is GRANTED. The Clerk of Court is directed to STAY this case pending the outcome of the arbitration. The Court declines to dismiss the case.

IT IS SO ORDERED.

Dated: June 28, 2022
      Rochester, New York

                                            HON. FRANK P. GERACI, JR.
                                            United States District Judge
                                            Western District of New York